NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

RED BIRD FOODS, INC., Respondent.

No. 16565.

United States Court of Appeals
Seventh Circuit.

July 30, 1968.

Rehearing Denied Sept. 9, 1968.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Frank H. Itkin and Peter Kinzler, Attys., N.L.R.B., Washington, D. C., for petitioner.

Harry P. Dees, Arthur R. Donovan, Joseph A. Yocum, Evansville, Ind., Kahn, Dees, Donovan & Kahn, Evansville, Ind., of counsel, for respondent.

Before KNOCH, Senior Circuit Judge, and KILEY and CUMMINGS, Circuit Judges.

KILEY, Circuit Judge.

The National Labor Relations Board has petitioned this court to enforce its order finding respondent Red Bird Foods, Inc., guilty of violating Sec. 8(a) (5) and (1) of the National Labor Relations Act, 29 U.S.C. § 151 et seq., by refusing to bargain with Retail Clerks Union, Local 536.[1] The Board ordered, *inter alia*, Red Bird to bargain with the Union on request. We enforce the order.

Red Bird operates a retail food store in Normal, Illinois, with forty-three employees. On January 15, 1965, the Union filed a representation petition with the Board seeking certification as bargaining agent for the thirty-eight Red Bird employees in the grocery department. An election was held and the Union won by a vote of 17–16. Red Bird filed objections, claiming that Union misconduct influenced the vote. The Regional Director investigated the charge of misconduct and overruled the objection based on that charge. The Director rejected the Red Bird argument that pre-election Union literature misrepresented the facts and required that the election results be set aside. Red Bird filed exceptions which the Board overruled in their entirety. The Board certified the Union as representative of Red Bird's grocery department employees.

The Union thereafter requested recognition and bargaining, but Red Bird refused the requests. Charges were filed and a complaint issued alleging the 8(a) (5) and (1) violations. Red Bird answered admitting the refusal to bargain, but denied the validity of the certification of the Union. The General Counsel filed a motion for summary judgment and the Examiner ordered Red Bird to show cause why the judgment should not be entered. The Examiner concluded that the issues raised by the answer had already been decided in the representation proceeding before the Director. He saw no need of a hearing on the summary judgment motion in the absence of newly discovered evidence not available at the time of the representation proceeding. The judgment was entered, and the Board affirmed. The order sought to be enforced followed.

The issue before us is whether the Board abused its discretion by certifying the Union.

Red Bird attacks the validity of the Board's certification of the Union on the ground that Union misrepresentations in the campaign were timed to prevent Red Bird from replying and were designed to, and did, influence the votes of employees. It argues that the misrepresentations, in view of the close vote, should compel setting aside the election and preclude enforcement of the order to bargain. The Board contends that its refusal to set aside the election was well within its discretion. Rockwell Mfg. Co., Kearney Div. v. NLRB, 7 Cir., 330 F.2d 795, 796.

Red Bird places its principal reliance on its allegation that a Union letter of February 10 together with its enclosures misled part-time employees into believing that the Union had an insurance plan covering them in effect in union shops in the Bloomington-Normal area.

The February letter stated, *inter alia*, "We * * * have $5,000.00 insurance for part time [employees] in our union." The letter further stated that "a copy of your contract and insurance program that our union stores have," is enclosed. A complete brochure of Plan I covering full-time employees was enclosed, but only two pages of the brochure covering Plan II covering part-time employees was included. These two pages were captioned Schedule of Benefits. The let-

---

1. Affiliated with Retail Clerks International Association. AFL-CIO.

ter also enclosed a copy of the Union contract. The insurance plan for full-time employees was in effect in union stores in northern Illinois, including the Bloomington-Normal area, but the part-time plan, while it was in effect in many parts of northern Illinois, was not in effect in the Bloomington-Normal area.

Red Bird argues that a "reasonable employee" would read the letter and brochures as meaning that Union contracts in existence in the area provided insurance for part-time employees. It contends that the incomplete brochure was designed to give false information to, and must have misled, voters at the election. Finally, Red Bird argues that the statement in the February 10 letter, that a full-time employee is one who works twenty-six or more hours a week, was misleading.

The Director found that the failure to send the complete brochure as to Plan II was due to a lack of enough copies because the plan was newly established; that the reason the part-time insurance was not in effect in the area was that the plan had been initiated in December, 1965, and the Normal, Illinois contract had been signed in 1963 and ran to June, 1966; that the benefits for part-time employees were in effect under existing Union contracts forty miles from the Bloomington-Normal area; that there was no misrepresentation because the letter made no specific claim that the part-time benefits were in effect in Normal; and that even if the letter and brochures were misleading the misrepresentation would not have had a substantial impact on the election because of the limited emphasis on insurance benefits in the campaign.

■ In this court Red Bird has the burden of persuasion that the election was not fair, NLRB v. Mattison Machine Works, 365 U.S. 123, 81 S.Ct. 434, 5 L.Ed.2d 455 and the accused conduct before us must be considered in reference to the "timing, proportion of employees affected and the character" of the claimed threat or deception. Rockwell Mfg. Co., Kearney Div. v. NLRB, 7 Cir., 330 F.2d 795, 797. Generally, an election will not be set aside for campaign misrepresentations unless they had a substantial impact on the election. Collins & Aikman Corp. v. NLRB, 4 Cir., 383 F.2d 722, 726. Corrections of inaccuracies and untruth are generally left to the parties and the good sense of the voters. Id.

■ The question of the validity of a representation election is reserved to Board discretion, and a Board decision to certify a union on the basis of an election will not be set aside unless the record shows that the Board acted arbitrarily or unreasonably in determining that there were no misrepresentations or that a misrepresentation did not have a significant impact on the election. Macomb Pottery Co. v. NLRB, 7 Cir., 376 F.2d 450; Follett Corp. v. NLRB, 397 F.2d 91, 7th Cir., June 10, 1968.

■ We are not persuaded that the Board abused its discretion in determining that the February 10 letter did not require the setting aside of the election. There were insurance benefits for part-time employees in Union shops forty miles away from Normal. The Union did not expressly claim that the benefits existed in the area and we should not require the Union in its campaign to make all disclaimers that might affect votes, where there is no showing of an invidious design. We cannot say the Director was compelled to find a misrepresentation in the circumstances, nor can we say he should have attributed, on what was before him, an evil purpose to the failure to send all of the brochure on Plan II to the employees. The statement in the letter defining full-time employees was generally accurate and anyone interested in details was free to refer to the Union contract. Finally, we think the employees probably knew that a contract had to be negotiated before any benefits would be obtained, even if the Union won the election.

Red Bird also argues that an "undated" letter, found by the Director to have been mailed January 31, was misleading and requires the election to be set aside. In that letter the Union stated, "[in] these states * * * part time clerks start at $1.59 and after six months go to $1.795 progressing to a top rate of $2.56 for male [sic] and $2.345 for females." The letter also stated that insurance benefits included "26 weeks at 70% of your pay while off sick."

Red Bird argues that actually it takes a part-time clerk eighteen months to go to $1.795 per hour and that the insurance benefit was $70.00 per week for twenty-six weeks for full-time employees.

The Board found that the wage rates quoted in the letter were correct, that in any event a copy of the Union contract which was later sent to the employees had the effect of clearing up any inaccuracies, and that the error in insurance benefits was specifically corrected in the February 10 letter. Furthermore, Red Bird had two weeks to reply to the January 31 letter and to correct any "misrepresentation," if it wished to do so.

The Board saw no reason to declare the election unfair and the certification invalid. We have not been persuaded that the Board abused its discretion in not deciding that the "misrepresentations" were deliberately designed to mislead voters in the election or that they had a substantial impact in rendering the election unfair.

The order will be enforced.

KNOCH, Senior Circuit Judge (dissenting).

Had the vote in this case been not quite so very close, I might be inclined to go along with the majority view that the Board did not abuse its discretion in deciding that the February 10th letter did not require setting aside the election. Under the circumstances, however, it seems only too likely to me that there was a substantial impact on the election. I would deny enforcement of the Board's order.