**CROSS BAKING COMPANY, Inc.,**
**Petitioner,**

v.

**NATIONAL LABOR RELATIONS**
**BOARD, Respondent.**

**No. 71-1185.**

United States Court of Appeals,
First Circuit.

Heard Nov. 2, 1971.

Decided Dec. 2, 1971.

Rehearing Denied Dec. 30, 1971.

---

Martin F. Payson, New York City, with whom Robert Lewis, Roger S. Kaplan, and Jackson, Lewis, Schnitzler & Krupman, New York City, were on brief, for petitioner.

Warren M. Davison, Deputy Asst. Gen. Counsel, with whom Peter G. Nash, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Edward P. Wendel, Atty., Washington, D. C., were on brief, for respondent.

Before ALDRICH, Chief Judge, Mc-ENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

The employer's basic defense to this section 8(a) (5) and (1) refusal to bar-

gain case is that the union certification was improper. It assigns two reasons.

1. *Fear and Coercion.* On November 18, 1968 an incident occurred on a public street in which one Patricia Von Dreden, as the principal actor, and another, assaulted two others, all being employees of the company, because they refused to pledge support to the union. The injuries received by one of the victims kept her from returning· to work for two months. Word of this, naturally, got about the plant, and there was talk that others might be assaulted. The election was held on January 22, 1969. The company alleges that this incident produced an atmosphere of fear and coercion which prevented a fair election. The Board held otherwise. 186 N.L.R.B. No. 28 (10/31/70).

■ We agree with the Board, but we do not agree with certain arguments it advanced in this court. Von Dreden was the principal in-plant union advocate. The Board regards it important that she was not shown to be a paid union agent. The question, however, is not the culpability of the union, but whether an atmosphere of fear and coercion was created in fact. *See* Home Town Foods, Inc. v. NLRB, 5 Cir., 1967, 379 F.2d 241, 244; Shoreline Enterprises of America, Inc. v. NLRB, 5 Cir., 1959, 262 F.2d 933, 942. It does not follow that fear would be less effective if it had an unofficial origin. Indeed, we can visualize situations where it might be more effective. If union officials instigated violence, anti-union employees might gain adherents to get rid, once and for all, of a belligerent union by voting against it, whereas if the atmosphere was the product of co-employees, the rest of the employees might feel they were going to be left with a disagreeable situation whatever should happen in the election, and hence had best learn to live with it. In any event, we agree with the earlier position of the Board that, regardless of whether coercive acts are shown to be attributable to the union itself, "[t]he important fact is that such conditions existed and that a free election was thereby rendered impossible." Diamond State Poultry Co., 1953, 107 N.L.R.B. 3, 6.

■ More importantly, we do not agree that the Board's refusal to accept testimony of employees that Von Dreden's conduct created an atmosphere of fear is supported by its citation of NLRB v. Gissel Packing Co., 1969, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547. There is a substantial difference between ex post facto testimony of subjective intent in signing authorization cards, normally offered to contradict their content, and testimony of reaction to force or threats of force. When fear and threats of violence are present, the employees' state of mind is precisely the question at issue. This is not to say that the Board is wrong in considering the circumstances objectively, but subjective evidence is entirely appropriate.[1] Even when the question is the objective one of whether a particular letter sent through the mails was a threat, making the sender criminally responsible, the subjective effect of the letter upon the recipient may be received. *See* United States v. Barcley, 8 Cir., 1971, 452 F.2d 930. The Board's protest that the evidence is objectionable because it is self-serving, or cannot be rebutted, is reminiscent of obsolete thinking excluding the testimony of interested parties.

Having said this, we in no way disagree with the Board's resolution of this issue based on its finding that Von Dreden was discharged shortly after the assault and did not return, and there were no further incidents during the two months remaining before the election. Even had witnesses testified that they

---

1. *See* NLRB v. Monroe Auto Equip. Co., 5 Cir., 1969, 406 F.2d 177; Ex-Cell-O- Corp. v. NLRB, D.C.Cir., 1971, 449 F.2d 1058.

were still frightened, the Board would have been more than justified in finding such testimony unpersuasive. But in point of fact the rejected offers of proof were simply that employees were frightened in November. Nothing was offered to show the atmosphere in January. The company's contention that the Board's action was unwarranted is so frivolous that we have indulged in this discussion simply to register, for future purposes, our views on the matters previously discussed.

■ 2. *Misrepresentation.* The union campaign commenced in October 1968; the election being scheduled for January 22, 1969. On January 20 the employees received from the union a letter asserting that the advantage of voting union was demonstrated by what "this union" had achieved in another similar plant— 75¢ an hour; $30. a week. In point of fact the union was a second union in that plant. The previous union had obtained 15¢ or $6; the electioneering union had achieved a contract that added 60¢, or $24. The Board affirmed the finding of the trial examiner that dollarwise, this was not a material difference. 186 N.L.R.B. No. 28 (10/31/70). It did not rest its finding on the ground that the price was right and that claiming credit due another union was inconsequential, a misrepresentation we condemned in NLRB v. Maine Sugar Industries, Inc., 1 Cir., 1970, 425 F.2d 942, 945, when the other union was entitled to the entire credit. Rather, the Board took the approach that there was a flat dollar exaggeration of what the union accomplished. We accept this approach. The Board, quite correctly, did not adopt the trial examiner's discounting the misrepresentations on the ground that the employees could have checked the statements in the letter and found them untrue. No reason is suggested why an employee should doubt the union's word. To excuse a flat misrepresentation on the ground that the deceived party, having no reason to do so, could have investigated and learned the truth is contrary to both legal and ethical principles. Indeed, such a conclusion as this by a trial examiner gives us deep concern.

There was, however, another deception not noted by the Board. The letter stated that the employees "have received" the increase stated. They had not, even on the 60 cent basis. This was a three-year, progressive contract, roughly one third at a time, viz., about 20 cents at the date in question. Instead of "have received" 75 cents, the employees over a three-year period would average 40 cents. Without discussion the Board concluded "in the context of the large increases which [the union] did in fact secure, there was not that 'substantial departure from the truth * * * [which] may reasonably be expected to have a significant impact on the election.'" (The quotation is from Hollywood Ceramics, 1962, 140 N.L.R.B. 221, 224.) The sole additional statement or reason given by the Board in support of this was the fact that there were also some holiday and vacation benefits, the value of which could not be measured. We believe this fact both irrelevant and inconsequential.

In seeking to support its decision the Board cites two lines of cases. One involves "extravagant" promises. See, e. g., Olson Rug Co. v. NLRB, 7 Cir., 1958, 260 F.2d 255, 256. An employee can regard a promise for what it is, and discount it accordingly. In the case of a statement of a positive past fact, apparently within the knowledge of the declarer, such decisions are inapposite. Secondly, the Board cites factual misstatement cases, with commendable candor, both favorable and unfavorable. These cases reveal a definite trend in support of two principles. The first is that if a misrepresentation has substance, it will be discounted if there is an opportunity for the employer to make an effective reply. See, e. g., Pepperell Mfg. Co. v. NLRB, 5 Cir., 1958, 403 F. 2d 520, 523; NLRB v. National Bever-

ages, Inc., 5 Cir., 1969, 418 F.2d 206, 208. The second is that in weighing materiality the closeness of the election is important. *See, e. g.,* Follett Corp. v. NLRB, 7 Cir., 1968, 397 F.2d 91, 95; Graphic Arts Finishing Co. v. NLRB, 4 Cir., 1967, 380 F.2d 893, 896.

■ The Board did not deal with either of these principles. It clearly could not afford to deal with the closeness of the vote, since one voter the other way and the union would have lost.[2] As to the other, the trial examiner had found that the employer had had adequate time to reply. The Board expressly declined to decide whether this finding was supported. It cannot, in this court, rely on it, unless we could rule as a matter of law against the employer. In fact, our ruling would be the other way. The evidence showed that a copy of the union's letter first came to the employer's attention on the afternoon of January 20; that the plant was closed, with only a skeleton force present on January 21; and that the voting began the morning of January 22. Adequate time to reply must mean adequate time to make an effective reply. Particularly where a union makes a statement of fact presumptively within its own knowledge, and the employer's response is, necessarily, hearsay, a last minute bare denial cannot be an effective reply. It is but natural for an employee to discount such response as a last minute gasp by the employer. We doubt, furthermore, whether many employees find themselves in the very last hours of the campaign with an open mind. The only effective reply that we can think of in such circumstance would be, if anything could be, to produce a photostatic copy of the contract whose terms the union misrepresented. Manifestly the employer had no time to make such a demonstration.

Nor is it an undue hardship to the union to find against it in such circumstances. Eleventh hour misrepresentations, manifestly deliberately untrue, have obviously been carefully timed to obtain the utmost benefit of the untruth, and presumably have been phrased to go just far enough to meet what the misrepresenting party believes to be necessary. We suggest there should be an affirmative burden upon that party, accordingly, to disprove materiality. If 20 cents now and 60 cents eventually would sound just as good as 75 cents now, it seems only reasonable to ask why the union should say the latter.

■ This was a very substantial misrepresentation. None of the Board's citations support its result. We may note that where an employer had misrepresented the facts as to a mere bonus not obtained by the electioneering union in another plant, the election was held tainted. Bausch & Lomb, Inc. v. NLRB, 2 Cir., 1971, 451 F.2d 873. If we were to affirm here, we would be endorsing an unarticulated, in the sense of un-reasoned, finding, which goes further, in the light of the lack of the employer's opportunity to reply and the closeness of the election, than has any other court decision. Feeling as we do about deliberate misrepresentations, we will not pioneer in this direction.

*Fair Hearing.* Although this aspect is now moot, we do not wish to leave unanswered the many claims by the employer that it did not receive a fair hearing. Some of its complaints, if justified at all, are inconsequential minutiae. To the extent that they are not minutiae we find them totally unwarranted. We see no basis whatever for criticizing the trial examiner's conduct.

The order is set aside. No costs.

2. We are reminded of the old song, "If you can't tell the world she's a good little girl, just say nothing at all." This may be good social advice, but it does not lead the Board toward objective decisions. The Board is always quick to point out, when the employer lost by a large margin, that this decreases the significance of the misrepresentation. It should correspondingly recognize the reverse.

## ON PETITION FOR REHEARING

The Board seeks rehearing, contending that the correctness of the employees having "received" the pay increase had not been before it, and consequently was not before us. In connection therewith it transmits for the first time the company's exceptions, filed pursuant to section 10(e), 29 U.S.C. § 160(e), to the trial examiner's decision. It is true that these spoke specifically of the difference between the 60 cents and 75 cents, and did not in terms make the point that even the 60 cents was not "received." However, the company made a general objection: "The finding that the union's letter of January 18 did not contain material misrepresentations which impaired the employees freedom of choice."

Jurisdictionally, this exception seems broad enough to raise any misrepresentation borne out by the record. If for some reason aliunde the Board was misled, it is now far too late to say so. As a petitioner to review and set aside the order, the company's brief was filed first. Its brief plainly asserted that the union letter had additionally misrepresented when it stated that the 75 cents had been fully "received." The Board's brief in no way suggested this claim was impermissible. In oral argument the company repeated the point. Again the Board made no objection.

To object to the argument now, after we have gone through the considerable process of writing an opinion, is totally unacceptable. It is implicit in the judicial process, as reflected in our Local Rule 9,* that, barring a substantial excuse, the court will digest a case but once, and ruminates only in the loose sense of the word. We have no intent to be a true ruminant.

*Rehearing is denied.*

---

\* "A petition for rehearing shall contain an introductory statement that the argument or matter was not presented before, together with an explanation why it was not." The Board's petition complied with the first requirement, but makes no mention of the second. This rule is not precatory.