The **LOUIS–ALLIS COMPANY,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 71–1361.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 23, 1972.

Decided June 14, 1972.

Rehearing Denied July 5, 1972.

---

514

M. J. Diederich, Beverly Hills, Cal., for petitioner.

Richard J. Scupi, Washington, D. C., for intervenor.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Michael S. Winer, Atty., N. L. R. B., Washington, D. C., Peter G. Nash, Gen. Counsel, Elliott Moore, Atty., N. L. R. B., for respondent.

Before KILEY, STEVENS and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

This appeal involves the Louis-Allis Company's attempt to test the validity of an election certification issued by the National Labor Relations Board by refusing to bargain with the certified union. The Board has filed a cross-application for enforcement of its decision as reported at 190 NLRB No. 54. We affirm the Board's certification and order the appellant to desist from its refusal to bargain.

The facts are readily summarized. On August 26, 1970, the International Union of Electrical, Radio and Machine Workers won an election at the Company's Evansville, Indiana plant. The election, conducted under the auspices of the National Labor Relations Board, was challenged by the Company through the timely filing of specific objections to the manner in which the election was conducted and to certain conduct by the Union which allegedly affected the election result. These objections raised questions which the Company believed necessitated evidentiary hearings. The Board's regional director conducted an investigation into the Company's objections and, concluding that they were without merit, overruled them and certified the election results. The regional director's findings were made without resort to evidentiary hearings. The Company then sought unsuccessfully to have its objections reviewed by the Board.

At this point, the Union demanded that the Company commence collective bargaining; the Company refused. An unfair labor practice charge alleging that the Company had violated section 8(a) (5) of the National Labor Relations Act,[1] was filed and a complaint issued. The Company's answer raised as defenses the issues posed and resolved by the regional director's disposition of the original objections. Counsel for the Board then moved for summary judgment, arguing that all the issues raised had previously been litigated in the representation proceeding and should not be relitigated in an unfair labor practice proceeding. The Company responded that, while no new issue existed, to grant a summary judgment would effectively deny the Company its due-process protections since no hearing had ever been held on its original objections.

The Board, in granting summary judgment, took official notice of the regional director's investigation into the Company's objections at the representation proceeding and ruled that these issues had been adequately resolved. Ac-

---

1. 29 U.S.C. § 158(a) (5).

cordingly, the Board found that the Company's refusal to bargain with the certified representative of its employees violated sections 8(a) (5) and (1) of the act. Based upon that finding, an order to cease and desist from the unlawful conduct was issued. The Company's appeal from that order is presently before us.

The basic issue before this court is whether the Board abused its discretion in refusing to set aside the election without holding an evidentiary hearing on the Company's objections. Within that broad question, the Company articulates two specific issues which, if resolved favorably to the Company, would compel reversal of the Board's order. First, the Company argues that the election itself was invalid due to certain practices engaged in by the Union; and second, that the review procedure which failed to provide for a hearing into the factual basis for the objections raised was inadequate.

## I.

In challenging the validity of the election, the Company raises six specific objections to Union activity: (1) that the Company was given inadequate time in which to campaign prior to the election; (2) that the election date was set while unfair-labor-practice charges were pending against the Company; (3) that the regional director was prejudiced against the Company; (4) that the Union illegally polled the employees before the election; (5) that the Board refused to challenge group leaders as it had indicated it would do, and thereby required the Company's observer to do so; and (6) that the Union mailed and distributed false and misleading information to employees at a date so close to the election that the Company had no opportunity to respond.

As to the Company's objection that the regional director precluded the Company from adequately presenting its position to the employees by directing that

the election be held on August 26, 1970, instead of September 4, 1970, as the Company had requested, our review of the record leads us to believe that the Board was correct in determining that the objection was without merit. The Fifth Circuit, in a recent *per curiam* opinion, N.L.R.B. v. Keller Aluminum Chairs Southern, Inc., 425 F.2d 709, 710 (5th Cir. 1970), held that the selection of a proper time for holding an election is a matter within the discretion of the Board under section 9(c) of the National Labor Relations Act.[2] *See also,* Surprenant Mfg. Co. v. Alpert, 318 F.2d 396, 399 (1st Cir. 1963); N.L.R.B. v. Fresh'nd-Aire Co., 226 F.2d 737, 740 (7th Cir. 1955). In order for us to find that the regional director abused his discretion in the selection of the August 26 election date, we would have to determine from the record that, as a result of an unreasonably short time period allowed for campaigning, the employees were deprived of an opportunity to become informed as to the election issues. The record does not support such a finding.

■ The election petition was filed on March 26, 1970, but due to a rather tortuous chain of unfair-labor-practice charges and countercharges by both the Company and the Union, the regional director did not set the August 26 election date until August 14. Thus, the Company had 12 days from the time the final date was determined until the actual election, and 42 days between the direction of the election and the date of the election, to present its side to the employees. As the regional director noted in denying the objection, the 42 days to campaign well exceeded the average time (25 to 30 days) between the Board's direction of an election and the date of the election. Additionally, even if the Company chose not to campaign until an actual date for the election was set, it nevertheless had 12 days in which to present its position. The Company could have taken advantage of the 42-

2. 29 U.S.C. § 159(c).

day period between the direction of the election and the actual election date. Inasmuch as it elected not to do so, it should not now be heard to complain that it was denied adequate time in which to present its position.

■ The Company's second objection charges that, in violation of long-standing N.L.R.B. policy, the regional director scheduled the election while an unresolved charge alleging violations of sections 8(a) (1) and (2) of the act were pending against the Company. The Company's position in regard to this objection will not bear scrutiny. Although it is true, as the Company argues, that the Board has expressed a policy against proceeding in a representation case while a charge is pending,[3] that policy is not without exception. Indeed, the Field Manual contains a specific exception to that policy which governs the case before us. Subsections 11730.1 and 11730.4a provide:

"An R [representation] case may be processed in the face of the pendency of a related C case (except, see 11730.-4) *if* the party filing the charge is willing that the R case be processed anyhow. He expresses his wilingness by executing a request to proceed." "A request to proceed *will not be honored* in *any* case where the charge alleges 8(a) (2) . . . conduct, except upon specific authorization. . . . "

Thus, in a case such as this, where the regional director obtained a request to proceed from the charging party and a specific authorization from the Board with respect to the 8(a) (2) charge, it was proper for the election to be scheduled prior to resolution of the charges.

■ The Company's third objection is similarly without merit. As the regional director noted in overruling the Company's objection to the issuance of a complaint immediately prior to the election, "[N]owhere in either the NLRB Field Manual or the Statement of Procedures is a regional director prohibited from issuing a complaint merely because of the pendency of an election." The Company, basing its objection on section 101.7 of the Board's Statement of Procedures,[4] argues that this section prohibits the issuance of a complaint until the parties have had an opportunity to settle the dispute. From that premise it concludes that the regional director's failure to provide an opportunity to settle the dispute prior to the issuance of a complaint is conclusive evidence that the regional director was prejudiced against the Company.

We find the Company's conclusion a *non sequitur.* Section 101.7 clearly provides for the exercise of discretion in the timing of complaints. It gives the regional director the power to choose between formal and informal resolution where the nature of the proceedings indicates one or the other is more advantageous. There is nothing to support the charge of bias or prejudice in this instance since the regional director's decision satisfactorily explains why the complaint was issued when it was.[5] Under

---

3. Section 11730 of the Field Manual states:
   "The Agency has a general policy of not proceeding in any representation case . . . where charges of unfair labor practice affecting some or all of the same employees are concurrently pending and where the charging party is a party to the [representation case]."

4. Section 101.7 of the N.L.R.B.'s Statement of Procedures (29 C.F.R. § 101.7) provides in pertinent part:
   "Before any complaint is issued or other formal action taken, the regional director affords an opportunity to all parties for the submission and consideration of facts, arguments, offers of settlement, or proposals of adjustment, except where time, the nature of the proceeding, and the public interest do not permit."

5. In a thorough supplemental opinion dealing with each of the Company's objections, the regional director explained why he chose in this instance to issue a formal complaint prior to informal efforts at settlement.
   "As to the Employer observation that it was never offered an opportunity to settle Case No. 25–CA–3865, before issuance of complaint, this would only

these circumstances, we find no abuse of discretion.

■ The Company next objects to a petition circulated by the Union calling for an election at the earliest possible moment. The objection characterizes the petition as a coercive poll of employees and, as such, condemns it as an unfair practice in violation of section 8(b) (1). In reviewing this objection, both the regional director and the Board concluded that the petition was neither a poll nor coercive in nature. That conclusion is based upon their belief that the petition was not designed to influence or interfere with the employees' free choice on the representation issue. We concur in that assessment.

The petition complained of specified that it was directed to all employees, both union and nonunion sympathizers. Indeed, the regional director's investigation into the objection disclosed that both groups actually joined in calling for an early election. Further, we find no merit in the Company's argument that, because such a poll might have been coercive if conducted by the Company, it is likewise coercive when conducted by the Union. The employer occupies a far different position with regard to the coercive impact of its actions upon employees than does a Union. The Board, recognizing this difference, has frequently applied different standards to the actions of the employer than it has to similar actions of unions. *See* Struksnes Construction Co., 165 NLRB 1062 (1967). Indeed, the Fifth Circuit dealt with this difference in N.L.R.B. v. Golden Age Beverage Co., 415 F.2d 26, 30 (5th Cir. 1969), when it held:

"The Board . . . has not followed a 'double standard' or abused its discretion, . . . by uniformly holding that a promise of increased or improved benefits by an employer to induce employees to reject a union is objectionable conduct, while similar promises on the part of a union are not. An employer in an unorganized plant, with his almost absolute control over employment, wages, and working conditions, occupies a totally different position in a representation contest than a union, which is merely an outsider seeking entrance to the plant. The opportunity for employer domination and misrepresentation is manifest; a finding by the Board, that his promises of benefit have an impact materially affecting the employees' free choice, while the union's do not, is not arbitrary or capricious or without a substantial basis in fact."

■ In disposing of the Company's objection that the regional director prejudiced the election by requiring the Company observor to challenge the "group leaders" at the election when it had been understood at the pre-election conference that the Board's representative would make the challenges, only two observations need be made. First, the procedures set out by section 11338 of the Field Manual dictate that the Board agent "should not challenge [voters he believes ineligible] until and unless one of the parties voices a challenge." Second, even if all the challenged group leaders had voted against the Company out of resentment to the challenge, the Union would still have won the election by more than 150 votes. Under these

have delayed the instant case even more. However, this is not the compelling reason that settlement was not sought prior to Complaint. This office had an earlier experience with the Employer at its Utrad subsidiary in Huntington, Indiana, in Case No. 25–CA–1897 and 25–CA–3408 wherein an informal settlement was approved by the Regional Director in 1964. However, in 1969 it was discovered that the Employer had not lived up to the terms of the settle-

ment and this office was forced to re-open the settled case. Accordingly, in the instant unfair labor practice case it was necessary to seek a formal settlement because experience had taught this office that an informal settlement would be fruitless. It is inherent that where a formal settlement is desired, complaint must first issue. To discuss settlement prior to the issuance of a complaint in these circumstances would only serve the purposes of delay."

circumstances, the Board properly overruled the Company's objection.

The final and most troublesome objection raised by the Company concerns certain campaign literature distributed by the Union. The Company contends that this information was not only intentionally false and misleading, but was intentionally distributed so close to the time of the election as to deny the Company a chance to respond. The letter objected to was sent by the Union on its official stationery to every employee and timed for receipt on the eve of the election. It represented that another company in the area had recently been organized by the same Union and that as a result of the Union's representation a new contract with benefits exceeding one dollar per hour had just been won. The Company alleges that this letter was false both in its literal language and false in the inferences which could reasonably have been drawn from it. The letter has two questionable passages:

"Not long ago, another group of workers at Central Industries in Chandler [Indiana] were told by that Company that a union would not benefit them. Yet, within the past two months, those employees, who are now members of the [Union] in spite of the Company's propaganda, received a contract worth more than $1.00 per hour in increased wages and benefits.

*   *   *   *   *   *

"Louis Allis is now insisting that the more than 50 employees who were laid off in recent weeks are not eligible to vote in this election because, the Company says, these employees have been terminated. We do not agree with the Company's position and will maintain that these employees are eligible to vote in this election under the rules of the NLRB.

"This does, however, point out very clearly the need for a binding, enforceable union contract since the Company's New Employee Guidebook states (on page 2) that it is important you remember the date you were hired since 'layoffs if necessary' and 'recall if laid off' are 'affected by your length of service.' The Company has apparently disregarded this language completely. Unfortunately, you now have no way of forcing the Company to obey their own rules."

With respect to the first passage, the Company argues that a fair interpretation would lead a reader to believe that the Union had recently won a contested election at Central Industries and that as an immediate result of Union representation substantial benefits had been won by collective bargaining. The actual facts, the Company asserts, are that Central Industries voluntarily recognized the Union five years prior to the date of the letter. Further, the Company contends that the letter was misleading since it failed to inform the employees that the contract referred to was not the initial contract, but rather the third within the five-year period, and that the benefits totaling a dollar per hour were not immediate benefits, but were to be spread over a three-year period. With respect to the second part of the letter, the Company argues that it was false and misleading in that the 50 employees who were reportedly "terminated" were in fact merely "laid off."

We begin an examination of these allegations and the precedent germane to them with the recognition that the field of representation elections and their policing is one wisely left to the Labor Board. N.L.R.B. v. Red Bird Foods, Inc., 399 F.2d 600, 602 (7th Cir. 1968); Follett Corp. v. N.L.R.B., 397 F.2d 91, 95 (7th Cir. 1968); Macomb Pottery Co. v. N.L.R.B., 376 F.2d 450, 453 (7th Cir. 1967). Absent a finding that deception or intimidation has impaired the ability of the employees freely to evaluate the claims made by one of the parties to an election and exercise a free choice, the courts will not interject themselves into this area. As this court recognized in Olson Rug Co. v. N.L.R.B., 260 F.2d 255, 257 (7th Cir. 1958), "Prattle rather than precision is the dominating characteristic of election publicity." We must defer to the

Board's expertise unless we are prepared to say that the Board's discretion was abused and that the false or misleading information was likely to have had an effect on the election result. *Follett, supra,* 397 F.2d, at 95. That test, as Judge Swygert noted in *Follett,* is a "flexible" one in which "[i]naccurate statements must be considered in the context of the over-all campaign material submitted to the voters. Some untruths may be so glaring that the Board ought not overlook them. . . . On the other hand, not every inaccuracy in election campaign propaganda requires the Board to intervene and set aside an election. The question is one of both degree and context." *Follett, supra* at 95.

Examining the portion of the letter which deals with the Central Industries contract, we agree with the regional director's conclusion that the letter "does not expressly, by inference, or by implication *convey the message that Pe-*titioner just recently won an election at Central Industries nor that the contract referred to was an initial contract." It is not alleged by the Company that Central Industries never employed anti-union propaganda or told its employees that a union would not benefit them. Without such an allegation or finding of fact, the first part of the letter cannot be said to be misleading. Further, while the letter is less than explicit as to the period over which the benefits were to be conferred, it is not false in its basic assertion. Central Industries did indeed negotiate a contract "worth more than $1.00 per hour in increased wages and benefits."

The Company refers us to a recent First Circuit decision, Cross Baking Co., Inc. v. N.L.R.B., 453 F.2d 1346 (1st Cir. 1971), in which that court set aside an election because last-minute election propaganda by the union was materially false and misleading. There, as here, the issue involved a statement by the union concerning benefits won at another plant. In both cases the statement failed to tell the employees that the benefits were to be spread over several

years. In *Cross Baking,* however, the statement also contained a substantial misstatement of the actual value of the benefits to be received. That element, not present in the instant case, is sufficient to render the *Cross Baking* decision inapposite to the resolution of the issue before us. The court in the *Cross Baking* case spoke of a material misrepresentation; the communication in the instant case, while not as complete and unambiguous as it might have been, is not a misrepresentation.

As to the second part of the letter, we reach a similar conclusion. The Company, it is true, technically only "laid off" the 50 employees referred to in the letter. However, in its effort to prevent the employees *from voting in the repre-*sentation election, the Company designated them as "laid off without prospect of recall," thereby making them ineligible to vote. Lima Hamilton Corp., 87 N.L.R.B. 455, 457 (1949); General Motors Corp., 113 N.L.R.B. 876, 878 (1955). In that status, the employees for purposes of this election were in the same position as if they had actually been terminated. Thus, since the Union's letter speaks to the issue of the Company's position on the question of these employees' right to vote in the election, we have difficulty perceiving how it is misleading. Clearly, it is not a "material misrepresentation of fact" sufficient to set aside this election. *Cf.* Celanese Corporation of America v. N. L.R.B., 291 F.2d 224, 226 (7th Cir.), cert. denied, 368 U.S. 925, 82 S.Ct. 360, 7 L.Ed.2d 189 (1961). Even if one were to view it as misleading, it is inconceivable that such a statement could have altered the result of an election in which the Union's margin of victory exceeded 150 votes out of a total of 276 votes cast. Considering that fact, as Judge Swygert did in a similar situation in *Follett, supra* 397 F.2d, at 95, we hold that the Board's certification of the Union was correct.

## II.

Turning finally to the Company's argument that the failure to provide

evidentiary hearings to examine the issues raised by the objections violates due process, we find that because no substantial and material issue of fact was raised by the objections, no evidentiary hearing was required.

■ It is axiomatic that due process requires evidentiary hearings only where "substantial and material" issues of fact are raised by the objecting party. N.L.R.B. v. Bata Shoe Co., 377 F.2d 821, 825–826 (4th Cir.), cert. denied, 389 U.S. 917, 88 S.Ct. 238, 19 L.Ed.2d 265 (1967); Macomb Pottery Co. v. N.L.R. B., 376 F.2d 450, 452 (7th Cir. 1967); N.L.R.B. v. National Survey Service, Inc., 361 F.2d 199, 204–205 (7th Cir. 1966). The National Labor Relations Act makes no provision for a post-election hearing in representation proceedings. The Board's Rules and Regulations, however, provide for evidentiary hearings where objections "raise substantial and material factual issues" which can only be resolved after a hearing. 29 C.F.R. § 102.69(c) and (e). In all other situations, the Board's investigation is deemed sufficient, indeed preferable, in that it precludes "the opportunity for protracted delay" by preventing "dilatory tactics by employers or unions disappointed in the election returns." N.L.R.B. v. Joclin Mfg. Co., 314 F.2d 627, 632 (2d Cir. 1963); N.L.R.B. v. O. K. Van Storage, Inc., 297 F.2d 74, 76 (5th Cir. 1961).

The Company bases this appeal solely upon the objections raised before and decided by the Board's regional director. It has not alleged that new or recently discovered evidence exists which it could show to have had a material effect upon the election. The Company has not offered to prove that the actions complained of had a determinative effect on the election. Indeed, the thrust of this appeal is a challenge to the reasoning and legal conclusions of the regional director, and, as such, raises no issues which would mandate a hearing. See Macomb Pottery Co. v. N.L.R.B., 376 F. 2d 450, 452–453 (7th Cir. 1967).

The petition to set aside the Board's order is denied and the Board's cross-petition for enforcement granted.

Enforcement granted.

STEVENS, Circuit Judge (dissenting).

"If we win the election and if we are as successful in bargaining with your employer as we were with Central Industries in Chandler (Indiana), you can expect to receive wage and fringe benefit increases averaging one-half cent over $1.00 per hour *some time in the next eight years*."

If that is what the Union's letter had said, it would have been accurate but unpersuasive. Instead, its author cleverly implied that the Union's success at Chandler justified an expectation of an immediate raise of more than $1.00 an hour.

Regardless of whether one or 100 votes were obtained by the use of this misleading propaganda on the eve of the election, I consider the deception sufficiently gross to justify strong measures to discourage comparable misbehavior by sophisticated organizers in the future. In my opinion, administrative approval of such fraud does not merit the label "expertise." I would set aside the election. *Cf*. Cross Baking Co. v. N.L.R.B., 453 F.2d 1346, 1349 (1st Cir. 1971).[1]

---

1. *Cross Baking* is not distinguishable on the ground that the statement that the employees had received 75 cents an hour was a misstatement of the actual value of the benefits, whereas that element is not present in the instant case. The 75 cent increase in *Cross Baking*, averaged over three years, approximated 40 cents. The $1.005 involved here, averaged over three years, would equal about 67 cents. Of course, if the wage levels during the preceding five years at Central Industries were taken into account, the average rate of increase would probably have been even lower, since the Union presumably referred to its most favorable negotiation.