ADVERTISERS MANUFACTURING
COMPANY, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent,

and

General Teamsters, Warehouse & Dairy
Employees Union, Local No. 126, a/w
International Brotherhood Of Team-
sters, Chauffeurs, Warehousemen And
Helpers Of America, Intervenor.

George SQUILLACOTE, Regional Di-
rector of the Thirtieth Region of the
National Labor Relations Board, For
and on Behalf of the NATIONAL LA-
BOR RELATIONS BOARD, Petitioner,

v.

ADVERTISERS MANUFACTURING
COMPANY, Respondent.

Nos. 81–2041, 81–1767.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 6, 1982.

Decided April 27, 1982.

Before CUMMINGS, Chief Judge, MAR-KEY,* Chief Judge, and POSNER, Circuit Judge.

MARKEY, Chief Judge.

Appeal No. 81–2041 is a petition brought by Advertisers Manufacturing Company (Company) under Section 10(f) of the National Labor Relations Act, as amended (Act) to set aside an order of the National Labor Relations Board (Board), and the Board's cross-application for enforcement of its order. In No. 81–1767, Company appeals from an order of the United States District Court for the Eastern District of Wisconsin, granting a petition for temporary injunction filed by the Board's Regional Director under Section 10(j) of the Act. We grant enforcement in 81–2041 and affirm the order granting a temporary injunction in 81–1767.

### Background

The General Teamsters, Warehouse & Dairy Employees Union, Local No. 126, a/w International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Union) won a representation election on September 12, 1980. Company made unilateral changes in working conditions after the election and filed its objections to the election on September 20, 1980. The Board overruled the objections and certified Union on January 19, 1981. Company refused to bargain with Union. On April 2, 1981, the Regional Director petitioned the district court for a temporary injunction under 10(j) of the Act to restore the status quo in working conditions as of the election date. The injunction was granted on April 30, 1981. On June 17, 1981, the Board found that Company violated § 8(a)(5) and (a)(1) of the Act by refusing to bargain with Union. A charge that Company violated the Act by making post-election unilateral changes is pending before the Board. Additional facts and the arguments presented here are believed clear from the opinion.

Russ R. Mueller, Milwaukee, Wis., for petitioner.

Joseph E. Mayer, Washington, D. C., for respondent.

* The Honorable Howard T. Markey, Chief Judge of the United States Court of Customs and Patent Appeals, is sitting by designation.

## OPINION

### 81–2041

### Union's Pre-Election Conduct

■ As this court stated in *Rockwell Manufacturing Co. v. NLRB*, 330 F.2d 795, 796 (7th Cir.), *cert. denied*, 379 U.S. 890, 85 S.Ct. 161, 13 L.Ed.2d 94 (1964), "Whether to set aside an election because of incidents during the campaign period is a matter for the sound discretion of the Board." Accordingly, in reviewing certification, we "defer to the Board's expertise unless . . . the discretion residing in the Board was abused." *Follett Corp. v. NLRB*, 397 F.2d 91, 95 (7th Cir. 1968).

■ The burden is on the challenger to show adequate reasons for setting an election aside. *NLRB v. Mattison Machine Works*, 365 U.S. 123, 124, 81 S.Ct. 434, 435, 5 L.Ed.2d 455 (1961); *NLRB v. Visual Educom, Inc.*, 486 F.2d 639, 643 (7th Cir. 1973). That burden is "heavy", *NLRB v. Sauk Valley Manufacturing Co., Inc.*, 486 F.2d 1127, 1130 (9th Cir. 1973), requiring that the challenger produce "specific evidence" of conduct "so glaring as to impair employees' freedom of choice." *Rockwell Manufacturing Co. v. NLRB*, 330 F.2d at 797.

Nothing of record, or in Company's arguments discussed below, establishes that the Board abused its discretion in overruling Company's election objections and finding a Section 8(a)(5) and (a)(1) violation in the Company's refusal to bargain with the duly certified representative of its employees.

### 1. Union's References to Decertification

■ Company was not entitled to an evidentiary hearing on its objection respecting Union's references to decertification. The Act does not require the Board to hold post-election hearings. A hearing may be conducted when the challenger raises "substantial and material factual issues," 29 C.F.R. § 102.69(d) (1981); *NLRB v. Clarytona Manor, Inc.*, 479 F.2d 976, 982 (7th Cir. 1973); *Louis-Allis Co. v. NLRB*, 463 F.2d 512, 519–20 (7th Cir. 1972), and proffers evidence establishing a prima facie case for setting the election aside. *NLRB v. Visual Educom, Inc.*, 486 F.2d at 644.

A prima facie case was not established by Company-submitted statements of four employees dated September 18, 1980, Board-obtained affidavits of three of those employees, or Company-submitted statement of employee Sorensen dated October 8, 1980. At most, the evidence establishes that Donald Wetzel, Union's Secretary-Treasurer, stated during the campaign that: (1) if Union won the election, and (2) if "at any time" employees became dissatisfied with its performance, then (3) "they could vote it out just like they voted it in." Thus Wetzel truthfully told employees that they could decertify the Union ("vote it out"). That Wetzel did not say when a decertification election could be conducted did not convert his true statement into a misrepresentation. *See NLRB v. Pinkerton's, Inc.*, 621 F.2d 1322, 1327 (6th Cir. 1980); *Louis-Allis Co. v. NLRB*, 463 F.2d at 519.

Moreover, on August 23, 1980, almost three weeks before the election, Company received a copy of Union's letter advising employees that they could "vote the Union out" if dissatisfied with performance of its officials. Accordingly, Company had an adequate opportunity to explain potential decertification obstacles, had it chosen to do so.

### 2. Union's References to Wage Increases

■ Company admits that by August 23, 1980, it had received both Union letters containing what it now alleges were misrepresentations about wage increases. Company did not respond to those letters. Assuming, arguendo, that Union's statements were misrepresentations, they cannot form a basis for overturning the election. Their receipt by Company almost three weeks before the election afforded Company fully adequate time for rebuttal. *Warner Press, Inc. v. NLRB*, 525 F.2d 190, 195 (7th Cir. 1975); *NLRB v. Red Bird Foods, Inc.*, 399 F.2d 600, 603 (7th Cir. 1968).

### 3. Union's Alleged Defamation

■ Wetzel's characterization of Company's president as a "liar" is commonplace

name-calling in a hotly contested campaign. That conduct, though regrettable, is ordinarily insufficient to set aside an election. *See Linn v. Plant Guard Workers*, 383 U.S. 53, 60–61, 86 S.Ct. 657, 661–662, 15 L.Ed.2d 582 (1966); *NLRB v. B. D. Holt Co.*, 516 F.2d 505, 507–08 (5th Cir. 1975). Moreover, President Minch had an opportunity to respond and did so two days before the election, engaging in his own brand of hyperbole directed at Wetzel.

### 81–1767
### *Company's Post-Election Unilateral Changes*

■ An employer acts at its peril in making unilateral changes in "wages, hours, and other terms and conditions of employment" following a union victory in an initial representation election and before the Board renders a decision on employer's election objections. If the Board rejects the objections and certifies the union, the employer's duty to bargain relates back to the date of the election and its unilateral actions while objections were pending can be found automatic violations of § 8(a)(5). *See Dow Chemical Co. v. NLRB*, 660 F.2d 637, 654 (5th Cir. 1981) and cases cited therein; *Sundstrand Heat Transfer Co. v. NLRB*, 538 F.2d 1257, 1259 (7th Cir. 1976); *Mike O'Connor Chevrolet-Buick-GMC Co.*, 209 NLRB 701, 703 (1974), *enforcement denied on other grounds*, 512 F.2d 684 (8th Cir. 1975).

■ It follows that, after Board certification, the employer is vulnerable to a Section 10(j) temporary injunction if there is "reasonable cause to believe" its post-election unilateral changes, which the Board has under review, did constitute violations of the Act.[1] Whatever may be the outcome of the Board's review, it cannot be said that there is no reasonable cause whatever to believe at this stage that Company's changes constituted violations.

Company's objections to the propriety of the injunction stem from a misunderstanding of the difference between general and limited orders. In contrast to the general order issued by the Board in Appeal No. 2041, the district court's order under Section 10(j) does not order Company to bargain; it merely prohibits unilateral changes of significance in terms and conditions of employment.

Company's argument that the court's order is not "just and proper" because it "does more than preserve the *status quo*" is without merit. Pending Board disposition of the post-election unilateral changes charge, the court's order merely restores the *status quo* in significant terms and conditions of employment, in the absence of bargaining, as of the date of the election.

Company's argument that the court's order is ambiguous, in prohibiting changes in working conditions that are "significant", is equally without merit. Guidance on the scope of the order is provided in the bench decision dated April 24, 1981, wherein the court gives examples of significant and insignificant ("nitpicking") changes in working conditions.

### Conclusion

In Appeal No. 81–2041, the petition for review is denied and the Board's order is enforced in full. In Appeal No. 81–1767, the district court's injunctive order is affirmed.

---

1. Company's petition for our review in No. 81–2041, cannot create in Company a right superior to the Regional Director's statutory right to seek a Section 10(j) temporary injunction after Board certification.